**Lillian Bridgwater WESTON et vir, Appellants,**

v.

**Edith VAN METER et al., Appellees.**

No. 6918.

Court of Civil Appeals of Texas. Texarkana.

Dec. 6, 1956.

Rehearing Denied Dec. 27, 1956.

Fred L. Williams, Jr., Angleton, Samuel C. Lipscomb, Beaumont, for appellant.

Hill, Brown, Kronzer & Abraham, J. Curtis Brown, W. James Kronzer, Houston, for appellee.

FANNING, Justice.

. Lillian Bridgwater Weston and husband, C. L. Weston, sued Edith Van Meter and husband, J. B. Van Meter, Ettie Mae Falvey, a widow, Thomas Falvey, and Samuel

J. Lee, in trespass to try title for 43.13 acres of land in Brazoria County, Texas, and joined therewith a suit in the nature of an equitable bill of review and a direct attack to set aside an earlier judgment of the same district court entered more than two years (47 months) prior thereto upon service by publication upon appellant Lillian Bridgwater (Adcock) Weston. Defendants moved the court in limine to prohibit plaintiffs from introducing and offering certain evidence, hereinafter more specifically referred to, which motion was granted by the trial court. Plaintiffs presented certain evidence on this bill of exception to the ruling of the trial court, announced that they could proceed no further and rested their case, at which time defendants also rested. The trial court entered a take-nothing judgment against plaintiffs and in favor of defendants. Plaintiffs have appealed.

On November 3, 1949, based upon service by publication on Lillian Bridgwater Adcock (then a feme sole and a non-resident of the State of Texas and being one and the same person as Lillian Bridgwater Weston) and her unknown spouse, their unknown heirs and legal representatives, the District Court of Brazoria County, Texas, entered judgment in trespass to try title in Cause No. 31,869, decreeing title to the 43.13 acres of land in question to be in Edith Van Meter as her separate property. The publication affidavit was in proper form and executed by appellee Samuel J. Lee, on September 9, 1949, and the citation by publication was duly made in accordance with law. Samuel J. Lee also made affidavit that he did not know and that plaintiffs in that suit did not know whether Lillian Bridgwater Adcock or any of the other unknown defendants, if any, were members of any branch of the military services of the United States of America, etc., and requested the trial court to appoint an attorney ad litem to represent said defendants. The trial court appointed an attorney ad litem to represent defendants and a hearing was had and a statement of facts in said cause was duly authenticated and filed in the cause. The record shows that Mrs. Van Meter and husband, prior to the service by publication, attempted to obtain personal service of non-resident notice as provided by Rule 108, Texas Rules of Civil Procedure, upon Lillian Bridgwater Adcock in the State of California, which citation was returned unserved by the sheriff of Los Angeles County, California. The statement of facts in the 1949 case clearly shows that the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of Lillian Bridgwater Adcock and of attempting to obtain service of non-resident notice was a matter then before the court for determination under Rule 109, T.R.C.P., and the court in entering judgment for Edith Van Meter in said cause necessarily determined the sufficiency of diligence in the matter with respect to the issuance of the citation by publication.

Appellants in seeking to set aside the 1949 judgment, alleged, among other things, that the affidavit of Samuel J. Lee was not made in "good faith", that he did not exercise due diligence in ascertaining the whereabouts of Lillian Bridgwater Adcock (Weston), and that, in effect, some of the testimony introduced in support of the 1949 judgment on the merits was false and untrue.

In the trial of the case at bar, appellees, out of the presence of the jury, moved the trial court to prohibit and instruct counsel not to refer or mention, directly or indirectly, either (1) that Samuel J. Lee had not exercised due diligence in ascertaining the whereabouts of Lillian Bridgwater Adcock Weston, or (2) that the testimony of any of the witnesses in the original proceeding was false. The basis of appellees' motion was that in ordinary trespass to try title suits, unlike tax suits, attempts to set aside a judgment (in a publication case) more than two years after the entry thereof were in the nature of an equitable bill of review, and that an equitable bill of review can only

be resorted to in the event the earlier judgment was procured by "extrinsic" fraud. It was appellees' position that since the amendment to Rule 109, T.R.C.P., effective February 1, 1946, the issue of diligence is expressly made "intrinsic" to the judgment.

At the time the motion in limine was presented, and upon several occasions during the argument thereof, counsel for appellants made it distinctly clear that they were not charging appellees with fraud, but based their case upon the contention that the court could and should inquire into the sufficiency of the diligence used by Mr. Lee prior to making his affidavit of September 9, 1949. In addition to expressly stating that they were not charging Mr. Lee with fraud, or actual knowledge of the whereabouts of Lillian Bridgwater Adcock Weston, her counsel expressly stated that appellants were only relying upon a contention of non-diligence. In this regard, immediately following the presentation of the motion, counsel for appellants read from previously prepared issues in his file, which he stated to be the only issues for jury consideration. To quote from the record, those issues read to the trial court were:

" 'Do you find from a preponderance of the evidence Samuel J. Lee failed to use due diligence,' and 'Do you find from a preponderance of the evidence that the property in this suit was purchased with the funds supplied by Mrs. Ellen Suit,' *and those are the only two issues in the case.* If the Court rules against us on the first issue, and says that we haven't raised an issue of fact, then this jury has no more concern with this lawsuit, we go to the Court of Civil Appeals; if the Court finds we have made an issue of fact of those two *proposition,* or even if he finds we have not raised the issue on the first one about the lack of diligence, we are out of Court, and the Court would have to instruct in favor of the defendants."

At another point counsel for appellant stated:

"If we have not raised an issue of lack of diligence on the part of Mr. Lee, then the second issue is not submittable to the jury and the Court can control that, and, as I say, this jury will go out of the case and have nothing to do with it, and we will have to go up on that proposition if the Court fails to submit the question of diligence or non-diligence, and the Court has the right to inquire into those matters now and determine whether or not the case was illy or properly decided in 1949 on the issue of diligence. We raise that question, it is the foundation of our lawsuit, and if we can't get over that hump, or we have got no right to submit the second one, so prejudice is a matter of no concern with these people if the Court elects to refuse the submission of this particular issue."

At another point counsel for appellant also stated to the trial court:

"The issue is this, was there a lack of diligence, and if the Court finds we don't raise that issue, then, of course, 'Mr. Jury, go home, that is the end of it.' "

In the light of the statements by counsel to the effect that the only question was the sufficiency of the diligence of Mr. Lee, that they were not charging him with fraud, and that if the court held that they could not go to the jury on the question of diligence, appellants could proceed no further, the jury was discharged and the only evidence received was that offered by appellants for the purpose of raising a prima facie case. That testimony was given and received upon a bill of exceptions for the purpose of demonstrating on appeal that appellants could have raised an issue of diligence and meritorious defense to the original cause.

Appellants in their bill of exceptions, however, did not offer any evidence seeking

to prove that appellees or their counsel were guilty of any character of extrinsic fraud in the procurement of the service by publication and resulting judgment. Appellants made no contention in the trial court that appellees or their counsel *knew* the whereabouts of Lillian Bridgwater Adcock (Weston) when the affidavit was made. The record also clearly reveals that the trial court did not cut off or prevent appellants from offering evidence of extrinsic fraud in the procurement of the 1949 judgment, if they had any such evidence. The judgment of the trial court also clearly reflects that there was no contention of extrinsic fraud, made by appellants before the trial court.

In view of the statements made by appellants' counsel to the trial court that they had no proof of fraud, that there were no issues of fraud, and their failure to offer any evidence of extrinsic fraud, and were not prohibited by the trial court from offering evidence of extrinsic fraud, if appellants had any, clearly the question of extrinsic fraud is not involved on this appeal. See Sedgwick v. Kirby Lumber Co., 130 Tex. 163, 107 S.W.2d 358.

■ The question involved in this appeal is whether more than two years following the entry of a trespass to try title judgment, based upon service by publication, such judgment can be cancelled and set aside upon a showing of lack of diligence upon the part of the person making the affidavit for the publication.

Appellants cite the case of Seastrunk v. Kidd, Tex.Civ.App., 53 S.W.2d 678, no writ history, which holds that under a contention that an affidavit for publication was falsely and fraudulently made, a trespass to try title judgment could be attacked within four years from its rendition under Art. 5529, R.C.S., upon a showing that the affiant *knew* of the whereabouts of the absent defendant. This case is not applicable to the case at bar because here there was no evidence offered that appellees or their counsel *knew* where Lillian Bridgwater Adock (Weston) was when the affidavit for publication was made in 1949 and there is no evidence in this record of any extrinsic fraud on the part of appellees or their counsel in the procurement of the 1949 judgment.

Appellants cite in their brief a number of cases dealing with foreclosures in delinquent tax suits involving judgments against alleged unknown owners cited by publication, which are not applicable to the question at bar. These cases involve statutes dealing particularly with tax suits. Also Rule 117a, T.R.C.P. elaborately sets forth rules of procedure for service by publication in tax suits but this rule omits any duty on the part of the District Court to make inquiry into the diligence used in ascertaining the whereabouts of the absent defendant.

*On the other hand, Rule 109, T.R.C.P., as of February 1, 1946, expressly makes it the duty of the trial court to inquire into the diligence used.* Historically, Rule 109, and its forerunner, Article 2039 of the Revised Civil Statutes of Texas, read as follows:

"Where a party to a suit, his agent or attorney, shall make oath when the suit is instituted or at any time during its progress, that any party defendant therein is a non-resident of the State, or that he is absent from the State, or that he is a transient person, or that his residence is unknown to affiant, the clerk shall issue a citation for such defendant for service by publication."

Effective February 1, 1946, Rule 109 was amended to read as follows:

"Where a party to a suit, his agent or attorney, shall make oath that the residence of any party defendant is unknown to affiant (and to such party where the affidavit is made by his agent or attorney) or that such defendant is a transient person, and that after due diligence such party and the affiant have been unable to locate the where-

abouts of such defendant, or that such defendant is absent from or is a nonresident of the State, and that the party applying for the citation has attempted to obtain personal service of nonresident notice as provided for in Rule 108, but has been unable to do so, the clerk shall issue citation for such defendant for service by publication. *In such cases it shall be the duty of the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant or to obtain service of non-resident notice, as the case may be, before granting any judgment on such service.* Provided, however, that where the affidavit shows that the defendant is not within the continental United States, and is not in the Armed Forces of the United States, it shall not be necessary for the party to show that the residence or whereabouts of the defendant is unknown or that an attempt has been made to procure service of nonresident notice. As amended by order of Oct. 10, 1945, effective Feb. 1, 1946." (Emphasis added.)

Rule 329, T.R.C.P., reads in part as follows:

"In cases in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by attorney of his own selection:

"(a) The court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after after such judgment was rendered. The parties adversely interested in such judgment shall be cited as in other cases. * * *"

After the two-year period provided in Rule 329, a suit to set aside a former judgment in a publication case, *setting up extrinsic fraud in the procurement of such judgment,* is in the nature of an equitable bill of review, and Article 5529, V.A.C.S., the four-year statute of limitation, would be applicable thereto. See Seastrunk v. Kidd, Tex.Civ.App., 53 S.W.2d 678, no writ history, and authorities cited therein. However, such type of suit is burdened with all of the necessary requirements for a bill of review in equity. These requirements are clearly stated in the case of Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998, which case also clearly states the distinction between "extrinsic" and "intrinsic" fraud. We quote from the court's opinion in this case as follows:

"Although the bill of review is an equitable proceeding, before a litigant can successfully invoke it to set aside a final judgment he must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party (3) unmixed with any fault or negligence of his own. Garcia v. Ramos, Tex.Civ.App., 208 S.W.2d 111, er. ref. Because it is fundamentally important in the administration of justice that some finality be accorded to judgments, these essentials have been uniformly recognized by our courts; therefore, bills of review seeking relief from judgments 'are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted'; and the rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done. Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W.2d 964. As said by the Supreme Court of California, 'Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.' Pico v. Cohn, 91 Cal. 129, 25 P. 970, 971, 27 P. 537, 13 L.R.A. 336, 25 Am.St. Rep. 159. * * *

"Fraud in its relation to attacks on final judgments is either extrinsic or intrinsic. Only extrinsic fraud will entitle a complainant to relief because it is a wrongful act committed 'by the other party to the suit which has prevented the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial. Such, for instance, as where he has been misled by his adversary by fraud or deception, did not know of the suit, or was betrayed by his attorney. In other words, fraud which denied him the opportunity to fully litigate upon the trial all the rights or defenses he was entitled to assert. "Intrinsic fraud" in the procurement of a judgment is not ground, however, for vacating such judgment in an independent suit brought for that purpose. And within that term is included such matters as fraudulent instruments, *perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed.'* State v. Wright, Tex.Civ.App., 56 S.W.2d 950, 952, which was cited with approval and substantially quoted by this court in Crouch v. McGaw, 134 Tex. 633, 138 S.W.2d 94.

"The Supreme Court of the United States gives these illustrations of extrinsic fraud: 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff' and then says: *'The court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed.'* * * * United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93." (Emphasis added.)

Rule 109, T.R.C.P., supra, clearly and expressly makes it the duty of the trial court to consider the sufficiency of the diligence in publication cases, and the evidence presented at the time of the hearing in the 1949 judgment in question clearly shows that this matter was then before the court. Thus it having been the duty of the trial court (under Rule 109) in 1949 to inquire into "the sufficiency of the diligence," such matter is clearly "intrinsic" to the judgment. And as heretofore stated, we think the record clearly shows that the question of the "sufficiency of the diligence" was squarely before the court in the 1949 case and that he did then determine that question by entering the judgment that he did enter decreeing the title and possession of the land in question to Mrs. Van Meter.

Appellants further contend that the claimed lack of diligence goes to the jurisdiction of the court itself thus making the 1949 judgment a nullity and void. This theory of appellants is repudiated by the Supreme Court of Texas in Commercial Credit Corp. v. Smith, 143 Tex. 612, 187 S.W.2d 363, 366, wherein the court states: "But even if it appeared that the affidavit supporting the request for the issuance of citation by publication had been improvidently made, this circumstance alone would not render the judgment void."

We conclude that the trial court correctly sustained defendants' motion in limine in question and correctly rendered a take-nothing judgment against appellants and in favor of appellees.

The judgment of the trial court is affirmed.