John Joseph MORRIS, Appellant,

v.

Sylvia Vale MORRIS, Appellee.

No. 04-87-00657-CV.

Court of Appeals of Texas, San Antonio.

Aug. 24, 1988.

Rehearing Denied Oct. 13, 1988.

David P. Strolle, Jr., Martin, Strolle & Oyervides, San Antonio, for appellant.

Robert L. Vale, San Antonio, for appellee.

Before BUTTS, REEVES and CHAPA, JJ.

## OPINION

CHAPA, Justice.

This is an appeal by appellant, John J. Morris, from an adverse judgment in a bill of review to set aside a default divorce judgment granted to appellee, Sylvia Vale Morris. The sufficiency of the service by publication in conjunction with the granted default judgment is challenged by appellant.

The critical issues which dispose of this appeal are

1) whether the case involves intrinsic or extrinsic fraud; and

2) whether establishing a meritorious defense is necessary to prevail in a bill of review under these circumstances.

On March 14, 1984, appellee signed and filed a divorce petition with an attached sworn Affidavit for Citation by Publication contending that the whereabouts of appellant were unknown to her and that after exercising due diligence to locate appellant, she was unable to do so. Appellant and appellee had been married for twenty years. On June 7, 1984, a default divorce was granted to appellee based on a Statement of Evidence that reflects appellee testified under oath she did not know the whereabouts of appellant and that "there is no place where [she] can go to find [appellant's] latest or present address." The court awarded appellee all the property of the marriage except what appellant might have with him at the time of the divorce.

Apparently unaware that he was divorced, appellant filed his suit for divorce on April 29, 1986, serving appellee personally. On February 6, 1987, appellant's divorce suit was dismissed because of the previously granted default divorce in June, 1984. The bill of review was filed on March 3, 1987, and this appeal followed the trial court's denial of relief.

The record reflects that during the period between March 1984 and June 1984, when appellee contended under oath that she was unaware of the whereabouts of the appellant and could not find him through due diligence:

1) Appellee received and endorsed several checks signed by the appellant which had appellant's address, and telephone number in Florida;

2) Appellee contacted appellant at the same telephone number on the checks;

3) Appellee mailed to appellant a letter from the Housing Authority to the same address on the checks;

4) Appellee told her attorney appellant's address on the checks, and did not send a copy of the divorce petition to appellant because, "my lawyer did not instruct me to give [appellant] a copy"; and

5) Appellee prepared and filed the 1982 Tax Return for both appellant and appellee on March 17, 1984 indicating appellant was out of state looking for employment.

Appellee testified she did not attempt to notify appellant about the divorce until June 1984 when she contended she told him verbally. She also admitted visiting appellant and staying with him in Florida during the month of December 1984 and not discussing the divorce at all.

Appellant testified that he was in contact with appellee and their children during the time in question and that appellee knew at all times his address and telephone number in Florida. Appellant further testified that he would have had no reason to file for his own divorce in 1986 if he had known about the June 1984 default divorce. He also contended that he first became aware of the 1984 divorce when his divorce action was dismissed in February 1987 because of the June 1984 default divorce. Appellant also complained that the court's awarding of 100% of the community property to the appellee in the June 1984 decree was unfair because he had always worked and contributed to the family income.

Because both parties agree that only extrinsic fraud can provide the basis for relief in a bill of review, the initial issue is whether this case involves extrinsic fraud.

... Only extrinsic fraud will entitle a complainant to relief because it is a wrongful act committed "by the other party to the suit which has prevented the losing party *either from knowing about his rights or defenses,* or *from having a fair opportunity of presenting them upon the trial.* Such, for instance, as where he has been misled by his adversary by fraud or deception, *did not know of the suit,* or was betrayed by his attorney. In other words, fraud which denied him the opportunity to *fully litigate upon the trial all the rights or defenses* he was entitled to assert. (Emphasis added).

\* \* \* \* \* \*

The Supreme Court of the United States gives these illustrations of extrinsic fraud: "Where the unsuccessful party has been *prevented from exhibiting fully his case,* by fraud or deception practiced on him by his opponent, as by *keeping him away from court,* a false promise of a compromise; or where the defendant *never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff." United States v. Throckmorton,* 98 U.S. 61, 25 L.Ed. 93 (1878). (Emphasis added).

*Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996, 1001–1002 (1950).

... Only extrinsic fraud will entitle petitioners to bill of review relief. *Alexander v. Hagedorn, Id.* at 574, 226 S.W.2d at 1001.

We have stated or expressly approved that extrinsic fraud is that fraud which denies a losing litigant the *opportunity to fully litigate his rights or defenses upon trial. Id.* Extrinsic fraud is "col-

lateral" fraud in the sense that it must be collateral to the matter actually tried and not something which was actually or potentially in issue in the trial. *Crouch v. McGaw*, 134 Tex. 633, 639, 138 S.W.2d 94, 97 (1940). *Extrinsic fraud is conduct that prevents a real trial upon the issues involved. O'Meara v. O'Meara*, 181 S.W.2d 891, 893 (Tex.Civ.App.—San Antonio 1944, writ ref'd). (Emphasis added).

*Montgomery v. Kennedy*, 669 S.W.2d 309, 312–13 (Tex.1984).

Appellant contends that because of appellee's fraud in causing a citation by publication to issue when personal service was appropriate, he was not afforded an opportunity to litigate upon the trial all his rights and defenses. If appellant's contention is correct, we clearly have an appeal involving extrinsic fraud. *United States v. Throckmorton, supra; Montgomery v. Kennedy, supra; Alexander v. Hagedorn, supra.*

A review of the record establishes that appellee was aware of the whereabouts of appellant from the time the citation by publication was issued on March 14, 1984, until the time the divorce was granted in June, 1984, and that due diligence would have resulted in personal notification to the appellant. We hold that extrinsic fraud was established by the evidence.

■ The next critical issue is whether under these circumstances, establishing a meritorious defense is a pre-requisite to obtaining relief by way of a bill of review.

In *Mullane v. Central Hanover B. & T. Co.*, the United States Supreme Court held that citation by publication violated the Fourteenth Amendment rights of an interested party whose whereabouts are known, stating:

As to known present beneficiaries of known place of residence, however, *notice by publication stands on a different footing.* Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.

The trustee has on its books the names and addresses of the income beneficiaries represented by appellant, and we find *no tenable ground for dispensing with a serious effort to inform them personally of the accounting,* at least by ordinary mail to the record addresses. (Emphasis added).

\* \* \* \* \* \*

Publication may theoretically be available for all the world to see, but it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property interests. We have before indicated in reference to notice by publication that, "Great caution should be used *not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact." Mc-Donald v. Mabee*, 243 US 90, 91, 61 L ed 609, 37 S Ct 343, 343, (1917) LRA 1917F 458.

We hold that the notice by publication of judicial settlement of accounts required by the New York Banking Law § 100–c(12) is incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication depriving known persons *whose whereabouts are also known of substantial property rights.* Accordingly the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed. (Emphasis added).

*Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 318–320, 70 S.Ct. 652, 659–60, 94 L.Ed. 865, 875–77 (1950).

In the *Matter of the Marriage of Peace*, the Amarillo Court of Appeals held that a judgment based on service by publication under facts extremely similar to those before us "[did] not pass constitutional muster," even if the complaining party actually knew of the pending divorce, stating:

... Service by publication is the method of notice which is least calculated to bring to the potential defendant's attention the pendency of a judicial action. *See Mullane,* 339 U.S. at 315, 70 S.Ct. at 657. The Supreme Court added, in *Schroeder v. New York,* 371 U.S. 208, 212–13, 83 S.Ct. 279, 282–83, 9 L.Ed.2d 255 (1962), the following:

> The general rule that emerges from the Mullane Case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." 399 U.S., at 318, 70 S.Ct. at 659.

Under all of the circumstances of this case, service by publication in the Friona Star located in Parmer County, Texas was not reasonably calculated to apprise Guadalupe of the pendency of the action and afford her an opportunity to present objections to the action. By his testimony at the hearing on the motion for new trial, Charles admitted that he knew where to send mail to Guadalupe in Mexico and that he had sent at least one letter to her Mexico address. Furthermore, the trial court's finding that Guadalupe knew of the pendency of Charles' action for a divorce for a long period of time and made no effort to file an answer and contest the action in any way does not aid or support the trial court's jurisdiction to render the 28 February 1980 judgment for divorce. *See Wuchter v. Pizzutti,* 276 U.S. 13, 24–25, 48 S.Ct. 259, 262–263, 72 L.Ed. 446 (1928); *United States v. Smith,* 398 F.2d 173, 177–78 (3rd Cir.1968).

The judgment is reversed and the action is remanded to the trial court for a new trial.

*Matter of Marriage of Peace,* 631 S.W.2d 790, 794 (Tex.App.—Amarillo 1982, no writ).[1]

In *Peralta v. Heights Medical Center, Inc.,* the United States Supreme Court held that in a bill of review, a showing of a meritorious defense is not necessary in setting aside a judgment entered without proper notice to appellant, stating:

> ... The Texas court held that the default judgment must stand absent a showing of a meritorious defense to the action in which judgment was entered without proper notice to appellant, a judgment that had substantial adverse consequences to appellant. By reason of the Due Process Clause of the Fourteenth Amendment, that holding is plainly infirm.
>
> Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, "it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915). As we observed in *Armstrong v. Manzo, supra,* 380 U.S., [545] at 552, 85

---

**1.** The dissent suggests that the case of the *Matter of Marriage of Peace,* only permits the testing of due diligence in a citation by publication within a 2 years period by a motion for new trial, and that a bill of review thereafter "is not the proper method to test the due diligence of a petitioner relying on citation by publication under rule 109." It is manifestly unjust to hold that when a party improperly serves the opposite party with an improper citation by publication and the improper service remains obscured for more than two years, no relief is possible. We do not read *Matter of Marriage of Peace* to so hold.

*Matter of Marriage of Peace* not only holds that the improper use of a citation by publica-tion "does not pass constitutional muster" but that it makes the case jurisdictionally infirm. We cannot see how the passage of two years can cure constitutional and jurisdictional infirmities.

In this case, we note that the default divorce in question was granted appellee on June 7, 1984 and that appellant filed his action for divorce on April 29, 1986. Although appellee filed an answer to the divorce proceeding of appellant thereafter, she failed to file her Plea of Res Judicata until February 6, 1987, more than 2 years after the date of the default divorce in question.

S.Ct. [1187] at 1191 [14 L.Ed.2d 62 (1965)] only "wip[ing] the slate clean ... would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place." The Due Process Clause demands no less in this case.

The judgment below is *Reversed.*

*Peralta v. Heights Medical Center, Inc.,* — U.S. —, 108 S.Ct. 896, 900, 99 L.Ed. 2d 75, 82 (1988).

In the case before us, the publication notice to appellant was constitutionally infirm, and required relief without the necessity of a showing of a meritorious defense.[2] *Peralta v. Height Medical Center, Inc., supra; Mullane v. Central Hanover B. & T. Co., supra; Matter of Marriage of Peace, supra.*

The judgment is reversed, and the cause is remanded for a new trial.

BUTTS, Justice, dissenting.

Because the trial court properly treated this case as an equitable bill of review of a final judgment, denied the petition, and made findings of facts and a conclusion of law accordingly, I respectfully dissent to the majority opinion.

Rule 109 of the Texas Rules of Civil Procedure provides for service of process by publication when the residence of any party defendant is unknown, and after due diligence the party affiant has been unable to locate the defendant. The rule further provides that when service of process is issued by the clerk,

[i]n such cases it shall be the duty of the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant or to obtain service of nonresident notice, as the

case may be, before granting any judgment on such service.

In this case the Divorce Decree granted on June 7, 1984, states, in part, that the attorney ad litem for John Joseph Morris, received process in this cause by substituted service but did not otherwise answer or appear. It further contains this statement:

The Court, having examined the pleadings and heard the evidence and argument of counsel, finds that all necessary residence qualifications and prerequisites of law have been legally satisfied, that this Court has jurisdiction of all the parties and subject matter of this cause, and that the material allegations contained on Petitioner's pleadings are true. ... A jury was waived, and all matters in controversy, including questions of fact and law, were submitted to the Court. All persons entitled to citation were properly served.

The trial court [hearing a divorce] has a mandatory duty to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant before granting judgment based on service by publication. *Matter of Marriage of Peace,* 631 S.W.2d 790, 792 (Tex.App.—Amarillo 1982, no writ).

Although a judgment following service of process on a defendant based on citation by publication is not a true default judgment, the proper procedure to test the due diligence question is by motion for new trial as prescribed by TEX.R.CIV.P. 329 (motion for new trial on judgment following citation by publication).

In those cases the court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment

---

2. Although we hold that a showing of a meritorious defense is not required under these circumstances, the record reflects evidence of a meritorious defense tried by consent in spite of general allegations of a meritorious defense in the pleadings. TEX.R.CIV.P. 67. Appellant testified, without objection, that the community property was purchased with earnings of both appellant and appellee, that he was gainfully employed and contributed to the community during the marriage, that he contributed to the community when he was away, that the tax records prepared by the appellee verified his contributions to the community, that he did not abandon the family but left because of his father's heart condition and was driven to the airport by appellee, and that had he known of the suit and been present he would have received something more than nothing.

was signed. Rule 329 is the vehicle utilized by the defendant in *Matter of Marriage of Peace, supra,* to test the diligence of that divorce petitioner in ascertaining her whereabouts. A bill of review is not the proper method to test the due diligence of a petitioner relying on citation by publication under Rule 109. Instead that party defendant must, within two years, move for a new trial as provided in Rule 329.[1]

It is noteworthy that the majority relies upon *Mullane v. Central Hanover B. & T. Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) which is an appeal taken immediately from the Surrogate Court's holding overruling the ad litem attorney's objection that the statutory provisions of New York Banking Laws providing for citation by publication notice to certain beneficiaries of a trust were inadequate to afford due process under the Fourteenth Amendment. He contended the court was therefore without jurisdiction to render a final and binding decree. The holding of the Surrogate Court was affirmed by the Appellate Division of the Supreme Court and also by the New York Court of Appeals. The attorney ad litem then appealed the State decision to the United States Supreme Court. That, too, is a vastly different situation from the present bill of review appeal from a final judgment.

*Peralta v. Heights Medical Center, Inc.,* 485 U.S. ——, 108 S.Ct. 896, 99 L.Ed.2d 75

(1988) involved a default summary judgment for money damages based on defective service of process. In that Texas bill of review case, the defendant had not been personally served with valid process. The record on its face showed void process which resulted from service effected more than 90 days after issuance of citation. *See* former TEX.R.CIV.P. 101 (*repealed* effective Jan. 1, 1988). Texas courts have held that service after the 90th day is a nullity, depriving the court of personal jurisdiction over the defendant. *Peralta v. Heights Medical Center, Inc.,* 108 S.Ct. at 897, n. 3.

The *Peralta* decision simply iterates the recognized law of Texas, that it is not necessary that a party plead and prove that he was prevented from making a meritorious defense in a bill of review case when service of process is void. *See, Texas Industries, Inc. v. Sanchez,* 525 S.W.2d 870 (Tex.1975); *Joiner v. Vasquez,* 632 S.W.2d 755, 761 (Tex.App.—Dallas 1981, no writ). The trial court would lack jurisdiction. That is not the present case since the service of process was not void. In *Peralta* the judgment was void. In this case the divorce judgment is not void.

As stated in *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996, 1002 (1950), in a bill of review case:

> Appellee stated she asked his parents for appellant's address prior to the divorce. They told her they did not know where he was and were not accepting calls from him then.
>
> Appellant, according to appellee, knew about the divorce in December, 1984, when his daughter visited him. The daughter required hospitalization and authorities were told the mother was responsible for the bills.
>
> Appellee testified she told appellant about the divorce in June, 1984, when he came by the house on the way from California to Illinois. She had earlier telephoned his grandmother in Connecticut in an attempt to locate him. She stated she knew where his family lived, but she could not locate appellant through them.
>
> The evidence was that in April, 1984, appellant did not live at the address on the brother's check. He lived elsewhere in Florida. At one time he used the address of a liquor store where he worked. Another time he lived in Oakland, Florida. He had lived a short while in Illinois and also in California as well as in Connecticut.

---

**1.** The trial court on bill of review was not required to hear evidence on "due diligence" to determine compliance with Rule 109; however evidence was presented. That evidence was conflicting, and it is plain from the record that the trial court resolved the conflicts against appellant.

Appellant used his brother's address in Florida. Appellee said when she attempted to contact him on the brother's telephone recording machine, there was no response. She did not know when the children spoke with their father on the telephone. The children did not testify. The brother did not testify.

She said no support checks were received. The three checks received by her and the children were reimbursement for rentals on a house. Appellant had caused the rental agency to send monies to him. The checks, appellant admitted, were his brother's checks ("J. Morris") drawn on his brother's account. He termed this a joint account, although only his brother's name appeared thereon, and his did not.

The court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed ... *United States v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93.

Rule 109 clearly makes it the duty of the original trial court (not the bill of review trial court) to consider the sufficiency of due diligence in publication cases. Moreover, lack of diligence under Rule 109 would not go to the jurisdiction of the present trial court, thereby rendering the final divorce judgment void. The matter of due diligence was before the divorce trial court and actually considered then. The court of equity in a bill of review will not retry the same issue.

Therefore, it was the appellant's task to meet the stringent requirements of a bill of review. He must allege and prove: (1) a meritorious defense to the cause of action, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own. *Alexander v. Hagedorn, supra* 226 S.W.2d at 998. The rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done. *Id.* Only extrinsic fraud will entitle a complainant to relief [successfully attacking a final judgment]. *Id.*

Thus, it having been the duty of the trial court under Rule 109 to inquire into the sufficiency of the diligence before granting the divorce in this case, such matter is clearly "intrinsic" to the judgment. *Weston v. Van Meter*, 297 S.W.2d 302, 307 (Tex.Civ.App.—Texarkana 1956, no writ). The matter of sufficiency of the diligence used [under Rule 109] was then squarely before the divorce court and hence clearly *intrinsic* to the judgment. *Johnson v. Barnwell Production Co.*, 391 S.W.2d 776,

782 (Tex.Civ.App.—Texarkana 1965, writ ref'd n.r.e.); *Hartely v. Langdon & Co.*, 347 S.W.2d 749, 757 (Tex.Civ.App.—Houston 1961, no writ).

In the present case appellant relied upon fraud to constitute the attack on the judgment. Since the matter of due diligence was intrinsic to the divorce judgment, it should be our holding there was no probative evidence of *extrinsic* fraud. That requirement of the bill of review was not met.

Next, the allegation in appellant's pleadings is:

Petitioner has a meritorious defense to the above-described suit, in that Petitioner was prevented by Respondent from asserting rights to a greater share of the parties' marital estate than that awarded to Petitioner in the Decree. [The petition asserts the citation by publication was fraudulently obtained, and as a result of his lack of knowledge of the divorce suit, he was not negligent.]

Regarding a meritorious defense to the original action, appellant's affidavit in support of his petition for bill of review states:

... I have a meritorious defense to the property division of the court in that the final decree of divorce entered in cause number 84–CI–04007 awarded one hundred percent of the community property to Sylvia Vale Morris. Upon a trial where I can present a defense, I would expect to receive and believe I am entitled to at least some portion of the community property and I am willing to pay my fair share of the community debts.

These general allegations do not meet the requirement of a bill of review as to a meritorious defense. Nor does there appear in the record proof of a meritorious defense.[2]

The trial court's findings of fact are:

**2.** Regarding the divorce judgment, appellant's counsel asked him "Do you feel like there would have been a different result?" He answered affirmatively.

The trial judge asked how the result would have been different. (The wife had made house payments on the mortgage, supported the two teenage daughters, received no child support.) The judge asked, "What portion [of the community property] would you be entitled to?" Appellant stated he believed "anyone is entitled to some percentage of community property after a marriage of some 18 years."

(1) petitioner failed to prove a meritorious defense,

(2) petitioner failed to prove actionable fraud,

(3) petitioner failed to prove lack of diligence or negligence on his part.

I agree that the trial court was correct in denying the bill of review. Therefore, I respectfully dissent.

