Mario G. ZUNIGA, Appellant,

v.

Elsa ZUNIGA, Appellee.

No. 04–98–00474–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 15, 1999.

---

Mario G. Zuniga, San Antonio, pro se.

Gary M. Poenisch, San Antonio, for appellee.

Before HARDBERGER, Chief Justice and LÓPEZ, and ANGELINI, Justices.

## OPINION

HARDBERGER, Chief Justice.

Mario G. Zuniga ("Mario"),[1] an incarcerated individual, appeals the entry of a final decree of divorce. In his sole point of error, Mr. Zuniga asserts that the trial court committed error by entering a post-answer default judgment in favor of his wife, Elsa Zuniga ("Elsa"), as to the decree of divorce. We reverse the decree of divorce and remand the case to the trial court.

### BACKGROUND

The following events are relevant to the case:

1) July 19, 1996: Elsa files Original Petition for Divorce.

2) January 9, 1998: Mario files "Dispute Petition for Divorce."

3) January 9, 1998: Mario files Original Answer.

4) February 23, 1998: Mario files Motion for Issuance of Bench Warrant and Motion for Appointment of Counsel.

5) March 20, 1998: Mario files Respondent's Original Answer.

6) March 23, 1998: Trial Court holds hearing on Elsa's Original Petition for Divorce. Following testimony by Elsa, the court stated, in part:

Court has reviewed the file. Mr. Zuniga was served, did file some type of answer. He has not appeared today and has defaulted on this matter. Based on the testimony by Mrs. Zuniga, I will go ahead and grant the divorce today and grant the relief that's been requested, including the visitation of over at [sic] KidShare.

7) April 1, 1998: Mario files Motion for Issuance of Bench Warrant and Motion for Appointment of Counsel.

8) April 6, 1998: Mario files Notice of Appeal.

In his sole point of error, Mario claims that the trial court erred in granting a post-answer default judgment. He asserts that he was unable to be present at the divorce hearing due to the trial court's failure to grant a bench warrant that would have allowed him to attend the trial. This would be difficult to argue against as he was in jail at the time. Elsa responds that the trial court did not err in entering judgment when Mario did not appear at trial because: 1) the record on appeal supports the judgment, 2) there is no reason to conclude that the outcome of the trial would have been different if Mario had appeared, and 3) Mario "did not offer to do equity by offering to reimburse [Elsa] for her expenses to take the default judgment."

1. For clarity, we refer to the parties by their first names.

DISCUSSION

### 1. Standard of Review

 We review the trial court's entry of judgment under the abuse of discretion standard. "An abuse of discretion will be found only when the trial court's action is arbitrary, unreasonable, or without reference to guiding rules and principles." *Washington v. McMillan,* 898 S.W.2d 392, 394 (Tex.App.—San Antonio 1995, no writ); *see Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

### 2. Access to Courts

 Individuals who are incarcerated do not automatically lose their access to the courts as a result of their incarcerated status. *See Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Incarcerated individuals, whether they are defendants or plaintiffs in civil actions, do not have an absolute right to appear in person. *See Pruske v. Dempsey,* 821 S.W.2d 687, 689 (Tex.App.—San Antonio 1991, no writ); *Birdo v. Holbrook,* 775 S.W.2d 411, 414 (Tex.App.—Fort Worth 1989, writ denied); *Brewer v. Taylor,* 737 S.W.2d 421, 423 (Tex.App.—Dallas 1987, no writ). This court has already reconciled the tension between the inmate *having an absolute right to access* the courts and the inmate *not having a right to appear* in person. In addressing these competing demands, we have addressed the importance of a trial court *giving consideration* to an incarcerated individual's desire to appear in person. *See Pruske,* 821 S.W.2d at 689; *see also Byrd v. Attorney General,* 877 S.W.2d 566, 569 (Tex.App.—Beaumont 1994, no writ). In so doing, this court has articulated several factors that the trial court should consider in attempting to "strike a balance that is fundamentally fair:"

a) the cost and inconvenience of transporting the prisoner between his place of incarceration and the courtroom;

b) the security risk and potential danger to the court and public of allowing the prisoner to attend court;

c) whether the prisoner's claims are substantial;

d) whether a determination of the matter can reasonably be delayed until the prisoner is released;

e) whether the prisoner can and will offer admissible, noncumulative testimony which cannot be offered effectively by deposition, telephone, or otherwise;

f) whether the prisoner's presence is important in judging his demeanor and credibility compared with that of other witnesses;

g) whether the trial is to the court or to a jury; and

h) the prisoner's probability of success on the merits.

*Pruske,* 821 S.W.2d at 689 (citing *Stone v. Morris,* 546 F.2d 730, 735–36 (7th Cir. 1976)); *see Nance v. Nance,* 904 S.W.2d 890, 892 (Tex.App.—Corpus Christi 1995, no writ); *see also Ballard v. Spradley,* 557 F.2d 476, 481 (5th Cir.1977).

### 3. Actions by the Trial Court and Options Available

 The record reflects that the trial court did not respond to, or consider, Mario's requests for a bench warrant and appointment of counsel. The record does not indicate that the trial court gave consideration to the factors weighing in favor of Mario's request to appear at the hearing. The record *is* replete with Mario's attempts to mount a defense from his place of confinement. Absent from the Reporter's Record is Mario's evidence in opposition to Elsa's petition for divorce.[2] He was not permitted to be present at what actually amounted to an *ex parte* hearing. The trial court did not seem concerned at his absence: "[He] did file some type of answer. He has not appeared today and has defaulted on this matter." In the ab-

---

**2.** The trial court made its decision "[b]ased on the testimony by Mrs. Zuniga."

sence of the trial court's consideration of Mario's request to appear in person, there is nothing in the record to show that the trial court attempted to strike a fair balance between the integrity of the correctional system and his right of access to the courts. *See Pruske,* 821 S.W.2d at 689; *Brewer v. Taylor,* 737 S.W.2d 421, 423–24 (Tex.App.—Dallas 1987, no writ).

Methods exist that a trial court may use to allow an inmate to participate in a hearing or trial. If the trial court had concluded that Mario's presence was unnecessary in order to enter the decree of divorce, the trial court could have afforded Mario the chance to "proceed by affidavit, deposition, telephone or other effective means." *In re Ramirez,* 994 S.W.2d 682, 684 (Tex.App.— San Antonio 1998, no pet.) (quoting *Byrd,* 877 S.W.2d at 569); *see Holt v. Pitts,* 619 F.2d 558, 562 (6th Cir.1980). This did not happen.

■ Mario's case is unlike that of an incarcerated plaintiff who chooses to file suit while in prison and whom the trial court does not permit to attend court in person. *See, e.g., Nichols v. Martin,* 776 S.W.2d 621 (Tex.App.—Tyler 1989, no writ); *Birdo v. Holbrook,* 775 S.W.2d 411 (Tex.App.—Fort Worth 1989, writ denied). In the present case, Elsa made Mario a respondent in a suit that sought to dissolve their marriage and alter the parent-child relationship with their daughter, Theresa. He did not initiate the suit. He had a right to be heard, especially considering that the suit affected his parental rights. Trial courts need to articulate the factors that weigh both in favor and against issuing a bench warrant and, if necessary, make alternative arrangements for inmates to present their side of disputes to the court. We conclude that the trial court abused its discretion in entering judgment against Mario.

### 4. Mario is Entitled to a New Trial

■ Elsa argues that under the three-part test announced in *Craddock,* Mario is not entitled to a new trial. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939) (requiring 1) that the defendant's failure to appear not be intentional, 2) the defendant to establish a meritorious defense, and 3) the filing of the motion for new trial be "at a time when the granting thereof" will not be injurious to the plaintiff). We disagree. Not only has Mario satisfied the requirement of filing a Motion for New Trial, but he has also met his burden under *Craddock* in light of the circumstances.

### a. Prerequisite

■ A motion for new trial is a *prerequisite* to complaining on appeal that a default judgment should be set aside. *See* Tex.R.Civ.P. 324(b)(1); *cf. Craddock,* 134 Tex. at 393, 133 S.W.2d at 126 (outlining the factors used to determine whether a defendant's *motion for new trial* will be successful in setting aside a default judgment). Although we are not aware of a Texas court that has reversed a default judgment on appeal when a defendant failed to file a motion for new trial as required by Rule 324(b)(1), at least one New Jersey court has reversed a default judgment when an incarcerated defendant was unable to attend the trial. *See Beneficial of New Jersey v. Bullock,* 293 N.J.Super. 109, 679 A.2d 723, 724 (App.Div.1996) (declaring that in light of the circumstances of the case, "it would be inappropriate to permit the entry of default judgment against a non-appearing defendant *who could not appear*" and stating that "before a default judgment can be entered against an inmate for 'nonappearance,' *the trial court must treat with liberality an inmate's endeavor to defend*") (emphasis added).

### b. Mario's Filing Construed As a Motion for New Trial

In the present case, Mario, a pro-se inmate, filed a Notice of Appeal on April 6, 1998 (which was within the trial court's plenary jurisdiction) that contains language not normally found in a traditional

Notice of Appeal. *See Brewer v. Collins,* 857 S.W.2d 819, 821 (Tex.App.—Houston [1st Dist] 1993, no writ); *see also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (holding the pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). Specifically, the letter accompanying the Notice of Appeal requested the Bexar County District Clerk to bring the Notice "to the attention of the 57th Judicial District Court." Such a request is customarily not found in a traditional Notice of Appeal. The implication here is that Mario was affording the trial court the opportunity to correct the default judgment that resulted when the trial court did not bench warrant Mario or obtain testimony from him. The April 6, 1998 filing stated that the judgment could prejudice Mario "because the Court did not bench warrant Respondent to attend the trial...."[3] We conclude that the substance of Mario's April 6, 1998 filing can be construed in part as a motion for new trial necessary to satisfy Rule 324(b)(1). We turn next to the three-prong *Craddock* test.[4]

### (1) Failure to Appear Was Not Intentional

Mario's failure to appear or be heard was not intentional or the result of conscious indifference, but occurred because the court failed to issue a bench warrant or request his testimony. Although Mario requested the trial court to issue a bench warrant, the trial court did not do so. The trial court did not seek any form of testimony from Mario that could have reasonably substituted for an appearance under *Pruske.* We believe that Mario's incarcerated status and the trial court's failure to issue a bench warrant for his attendance or allow an alternative means of participation, as he explained in his April 6, 1998 filing, satisfies the first prong of *Craddock.*

### (2) Mario Need Not Establish a Meritorious Defense

Because we have already concluded that the trial court did not afford Mario due process in adjudicating the dissolution of his marriage, we need not examine whether Mario has established a meritorious defense in his pleadings. *See Peralta v. Heights Med. Ctr.,* 485 U.S. 80, 86–87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (stating that when a person has suffered a deprivation of property in a manner contrary to due process, "it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits"); *Morris v. Morris,* 759 S.W.2d 707, 710–11 (Tex.App.—San Antonio 1988, writ denied). In the present case, the trial court ordered Mario to pay $3000 in attorney fees, divided the marital estate, ordered Mario to pay $264.52 per month in child support, and granted judgment against Mario in the amount of $39,942.52 for retroactive child support. In light of the process Mario should have received

---

3. Although Mario requested the appointment of an Attorney Ad Litem, the court took no action. Whether counsel was appointed to assist or act on behalf of Mario is not influential upon the outcome of the case.

4. Mario is not introducing any evidence in his April 6, 1998 filing. He had previously filed sworn motions requesting the trial court to issue a bench warrant. These pleadings, when construed liberally with the April 6, 1998 filing, fill any evidentiary void necessary for the trial court to conclude that the trial court's failure to issue a bench warrant entitles him (under *Pruske)* to a new trial.

Because he is not introducing any evidence in the April 6, 1998 filing, he need not attach any supporting affidavits in support of his desire for a new trial. The purpose of such affidavits is to bring evidence before the court. *See* Justice Michol O'Connor et al., O'Connor's Texas Rules—Civil Trials § 3.2, at 548 (1999) (stating that affidavits *are* required "when the motion for new trial is based on the grounds listed in TRCP 324(b)(1) or *any other* ground that requires the *presentation of evidence* at a hearing") (emphasis added). A typical motion under Rule 324(b)(1) would have required the presentation of evidence. Mario's case, as the facts demonstrate, is not typical.

under *Pruske,* and his deprivation of property adjudged by the trial court (as well as the dissolution of his marriage and alteration of the legal relationship with his daughter), we conclude that Mario need not set forth a meritorious defense in order to be entitled to a new trial.

### (3) No Delay or Injury

In construing his April 6, 1998 filing liberally, we intimate Mario's readiness for trial. He reminds the trial court that a motion for bench warrant was filed with the trial court. As of April 6, 1998, the motion had not yet been ruled upon, which suggests that Mario continued to desire his day in court. Mario's failure to offer reimbursement to Elsa for her attorney's fees that she incurred at the first hearing should not necessarily preclude a new trial. *See Angelo v. Champion Restaurant Equip. Co.,* 713 S.W.2d 96, 98 (Tex.1986). "Involved is an equitable principle, and the court should deal with the facts on a case-by-case basis in order to do equity." *Id.* We note that in the present case, Mario is without financial means to reimburse Elsa for the fees that she incurred in the first hearing.

### (4) The Result

■ The April 6, 1998 pleading that we are construing in part as a motion for new trial satisfies the requirements under *Craddock* in light of *Peralta* and its progeny. Mario pursued his defense with reasonable diligence and with the means available to him from within the walls of the

Goree Unit. Because he was effectively excluded from the proceedings dissolving his marriage and his parental rights, the post-answer default judgment was improper. Equity and fairness demand that he receive a new trial that comports with the requirements this court has stated in *Pruske.*[5]

### Conclusion

We reverse and remand the case to the trial court for a new trial.

ANGELINI, Justice, dissents.

ANGELINI, Justice, dissenting.

I respectfully dissent and would affirm the trial court's judgment.

Under Texas law, a motion for new trial is a prerequisite to complaining on appeal that a default judgment should be set aside. *See* Tex.R.Civ.P. 324(b)(1). In order to set aside a default judgment, the motion for new trial must (1) show the failure to appear was not intentional, (2) set up a meritorious defense, and (3) show that the motion for new trial was filed at a time when granting it would not harm the plaintiff. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939). To successfully challenge a post-answer default judgment, the defendant must allege, and support with sworn proof, the three *Craddock* requirements. *See Wiseman v. Levinthal,* 821 S.W.2d 439, 441 (Tex.App.—Houston [1st Dist.] 1991, no writ). Further, a motion for new trial to set aside a default judgment is a complaint on which evidence must be heard.

---

**5.** Elsa argues that the judgment should be affirmed if it can be supported by any legal theory based on the evidence. She also argues that the result would be the same even if Mario had appeared at trial. We disagree. If Mario were present at the hearing, he may have been able to respond to Elsa's evidence, which may have undermined legal theories in support of the current outcome. Also, Mario's testimony as to his indigent status and earning potential may very well influence the award of attorney fees and child support. For example, Mario's hourly wage prior to his incarceration was $6 .00 per hour. Although

awarding child support is within the discretion of the court, we note that the amount in this case may have deviated from the child support guidelines; we believe that Mario testimony may be influential in .setting the amount that is in the best interest of his daughter. *See* Tex.Fam.Code Ann. 154.125, 154.130 (Vernon 1996). Mario's testimony may also affect the court's decisions as to other matters in the divorce decree, such as the division of the marital estate and visitation, both of which are matters that are within the court's discretion.

*See Puri v. Mansukhani,* 973 S.W.2d 701, 715 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *Fluty v. Simmons Co.,* 835 S.W.2d 664, 667 (Tex.App.—Dallas 1992, no writ). Any motion for new trial filed by Mario in an attempt to set aside the default judgment was therefore required to address the *Craddock* requirements and to be accompanied by a sworn affidavit or a declaration satisfying the requirements of TEX.CIV.PRAC. & REM.CODE ANN. 132.001 et. seq.[1]

Mario's notice of appeal, which the majority construes as a motion for new trial, does not meet these requirements. Mario's notice of appeal reads as follows:

> Comes Now Mario G. Zuniga Respondent herein in the above entitled and numbered cause files this Notice Of Appeal as grounds therefor and would show the Court the following. Respondent is not aware of what kind of judgement was signed on March 23, 1998 by Honorable Judge Johnny D. Gabriel Jr. This judgment that was sign [sic] March 23, 1998 could prejudice Respondent because the Court did not bench warrant Respondent to attend the trial on March 23, 1998 to assist Attorney Ad Litem on the merits. A Motion For Issuance of Bench Warrant was filed with the Bexar County District Clerk on February 23, 1998. A Motion For Appointment Of Counsel Attorney Ad Litem was filed with the Bexar County District Clerk on February 23, 1998.

I would find that Mario's notice of appeal, even if construed as a motion for new trial, is insufficient because it does not adequately address the *Craddock* requirements, is not verified, and does not contain a statement in lieu of a sworn declaration in accordance with § 132.001 of the Texas Civil Practices and Remedies Code.

1. Section 132.001 et. seq of the Texas Civil Practices and Remedies Code allows inmates to make an unsworn declaration in lieu of a sworn verification if the unsworn declaration

Accordingly, I would affirm the trial court's judgment.

is signed by the person making the declaration as true under penalty of perjury and it substantially complies with the wording of the statute.