Reversed and Remanded and Opinion filed June 6, 2002















Reversed and
Remanded and Opinion filed June 6, 2002.

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-01-00216-CV

_______________

 

MOHAMMED
MALEKZADEH, Appellant

 

V.

 

REBECCA MALEKZADEH, Appellee

__________________________________________

 

On Appeal from
the 312th District Court

Harris County, Texas

Trial Court
Cause No. 00-29196

__________________________________________

 

O P I N I O N

 

            In this divorce case, Mohammed Malekzadeh appeals pro se a post-answer default judgment in
favor of Rebecca Malekzadeh on the grounds that: he
was not given 45 days notice of the trial setting; the trial court erred by
ignoring his request for a bench warrant to appear for trial; Rebecca and her
attorney engaged in fraud and misrepresentation at trial and knowingly used
perjured testimony to affect the terms of the divorce decree; and the trial
court erred by changing the surname of his minor children.  We reverse and remand.

            Because Mohammed’s second issue is dispositive of the appeal, we will proceed to address
it.  That issue contends that the trial
court denied Mohammed due process by ignoring his requests for a bench warrant
to attend the trial.

            In Texas, a prison
inmate has a constitutional right of access to the courts, but only a qualified
right to appear personally at a civil proceeding.  Dodd v.
Dodd, 17 S.W.3d 714, 717 (Tex. App.—Houston [1st
Dist.] 2000, no pet.).  A trial court’s
decision regarding how to allow an inmate access to the courts is reviewed for
abuse of discretion.  Aguilar v. Alvarado, 39 S.W.3d 244, 248
(Tex. App.—Waco 1999, no pet.).  If a
trial court denies an inmate’s request to personally appear at trial,[1] it
should allow the inmate to appear by affidavit, deposition, telephone, or other
effective means.[2]  Id.  Thus, where an inmate requests a personal appearance,
the trial court is required to make a
determination as to the necessity of a personal appearance versus other means
of participating.[3]  A trial court abuses its discretion when it
fails to make such a determination or otherwise effectively bars an inmate from
presenting his case.  Id.[4]

            In this case, throughout the period
in which Rebecca filed for divorce and the default judgment was entered,
Mohammed was an inmate in the Texas Department of Corrections in Amarillo.[5]  Mohammed’s pro se answer contained a motion
for issuance of a bench warrant.  In his
written objection to Rebecca’s request for an expedited trial setting, Mohammed
again asked to be present at trial.  After
he received notice of the trial setting, he reiterated his request for a bench
warrant in a letter to the District Clerk and asked to be advised whether he
would be allowed to appear.

            However, according to the record,
the only consideration of Mohammed’s request for a bench warrant was the
following exchange at the beginning of trial:

[Rebecca’s attorney]:            I
would like the Court to also take notice for the record  that [Mohammed] . . . did request a Bench
warrant, but never proceeded with a hearing on that motion . . . that was
ordered by this court authorizing that Bench warrant.

                                                            *          *          *

THE COURT:                        Yeah,
I do have a motion that was never heard by this court.  It was never set for hearing by this
court.  No one ever appeared on the
respondent’s behalf to argue this motion. 
And there has never been any order presented, or anything else pursuant
to that motion to have [Mohammed] Bench warranted down here.  So, it appears that he has not followed up on
his request.  So, you may go forward.

            The divorce decree thus recites that
Mohammed made a general appearance and was duly notified of trial, but failed
to appear.  It also appoints Rebecca and
Mohammed sole managing conservator and possessory
conservator of their children, respectively, changes the children’s surname to
Rebecca’s maiden name, and makes no provision for Mohammed to have any definite
visitation with his children, but only that he will have such possession as the
parties mutually agree (and under supervision by a third party because of his
incarceration for molestation of a minor).

            Although Mohammed did not initiate the
divorce suit and was not represented by counsel, its consequences to him were
considerable in that it divided the couple’s marital property, established
their rights with regard to their children, and determined that his children
would no longer bear his name. 
Regardless of the extent to which Mohammed’s participation in the trial
of this case might have affected the outcome,[6] he had a
due process right to participate in some meaningful manner and made three
written requests to do so.  However, by
making no inquiries or determination of how Mohammed would participate,
conducting the trial without his participation, and then adjudicating his
fundamental rights, the trial court denied Mohammed this due process right and
abused its discretion.

 class=Section2>

            Ordinarily, to obtain a new trial
following a post-answer default, the defaulting party must file a motion for
new trial showing that: (1) the failure to appear was not intentional or due to
conscious indifference; (2) the moving party has a meritorious defense to the
underlying claims; and (3) granting the motion will cause no delay or injury to
the opposing party.  Lopez v. Lopez, 757 S.W.2d 721, 722 (Tex.
1988).  Similarly, a judgment generally
may not be reversed on appeal unless the error complained of probably: (1)
caused the rendition of an improper judgment; or (2) prevented the appellant
from properly presenting the case to the court of appeals.  Tex.
R. App. P. 44.1(a).[7]  However, where a party has received no notice
of a trial setting, the requirement to show a meritorious defense in order to
obtain a new trial violates due process. 
Lopez, 757 S.W.2d at 723
(citing Peralta v. Heights Med. Ctr.,
Inc., 485 U.S. 80 (1988)).  This is
true even if imposing the requirement was harmless, i.e., the moving party could not establish a meritorious defense:

            Where a person has been deprived of
property in a manner contrary to the most basic tenets of due process, “it is
no answer to say that in his particular case due process of law would have led
to the same result because he had no adequate defense upon the merits.” . . .
[O]nly “wiping the slate clean . . . would have
restored the petitioner to the position he would have occupied had due process
of law been accorded to him in the first place.”

Peralta, 485 U.S. at 900.

            In this case, Mohammed was not
deprived of notice but, rather, an opportunity to be heard.  However, we do not believe that any less due
process protection accompanies the right to an opportunity to be heard than the
right to notice, the ultimate purpose of which is to facilitate the right to be
heard.  See id. at 899 (noting that a fundamental requirement of due
process is notice reasonably calculated to apprise interested parties of the pendency of the proceeding and afford them an opportunity
to present their objections).

            Similarly, Mohammed did not file a
motion for new trial, but simply appealed the default judgment.  However, it is clear that the requirements
for a new trial, besides a meritorious defense, were met, and that preventing
him from participating in the trial also satisfied the harm standard of
preventing him from properly presenting his case on appeal.[8]  Morever, under the
rationale of Peralta, if a
meritorious defense requirement cannot be imposed where due process is denied
by lack of notice, we do not believe a requirement to file a motion for new
trial[9] or
to establish harm, if applicable, would fare any better where due process is
denied by allowing no opportunity to participate in a trial.  Accordingly, we sustain Mohammed’s second issue,[10]
reverse the judgment of the trial court, and remand the case to the trial court
for further proceedings.

 

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment
rendered and Opinion filed June 6,
 2002.

Panel
consists of Justices Anderson, Hudson, and Edelman.

Do Not
Publish — Tex. R. App. P.
47.3(b).

 

 











[1]           In determining whether a personal
appearance is warranted, the trial court must balance the government’s interest
in protecting the integrity of the correctional system against the prisoner’s
right of access to the courts.  Dodd, 17 S.W.3d at 717. 
In doing so, two key factors are whether an inmate is represented by
counsel or is pro se, and whether the inmate is a civil defendant rather than a
plaintiff.  Id. at 717.  Additional factors include: (1) the cost
and inconvenience of transporting the prisoner to court; (2) the security risk
and potential danger of allowing the prisoner to attend open court; (3) whether
the prisoner’s claims are substantial; (4) whether a determination of the matter
can reasonably be delayed until the prisoner is released from incarceration;
(5) whether the prisoner can and will offer admissible, noncumulative
testimony which could not be offered effectively by deposition, telephone, or
otherwise; (6) whether the prisoner’s presence is important in judging his
demeanor and credibility compared with that of other witnesses; (7) whether the
trial is to the court or to a jury; and (8) the prisoner’s probability of
success on the merits.  Byrd v. Attorney Gen. of the State of Texas, 877
S.W.2d 566, 569 (Tex. App.—Beaumont 1994, no pet.) (per curiam).





[2]           The right of a prisoner to have
access to the court entails not so much his personal presence, as the
opportunity to present evidence or contradict the evidence of the opposing
party.  Dodd, 17 S.W.3d at 717.





[3]           See Byrd, 877
S.W.2d  at 569.

 





[4]           See Jones
v. Jones, 64 S.W.3d 206, 209-12 (Tex. App.—El
Paso 2001, no pet.) (reversing post-answer default divorce decree) (McClure,
J.); Taylor v. Taylor, 63 S.W.3d
93, 96-98 (Tex. App.—Waco
2001, no pet.) (same) (Davis, C.J.); In
re Marriage of Daugherty, 42 S.W.3d 331, 335-36 (Tex.
App.—Texarkana 2001, no pet.) (same) (Cornelius, C.J.);  Dodd,
17 S.W.3d at 716-18 (reversing property division portion of post-answer
declaration that marriage was void);  Zuniga v. Zuniga, 13 S.W.3d 798, 800-04
(Tex. App.—San Antonio 1999, no pet.) (reversing post-answer default divorce
decree) (Hardberger, C.J.); Byrd, 877 S.W.2d at 569; Pruske v. Dempsey,
821 S.W.2d 687, 688-89 (Tex. App.—San Antonio 1991, no writ) (reversing
post-answer default judgment in damage suit); Nichols v. Martin, 776 S.W.2d 621, 622-23 (Tex. App.—Tyler 1989)
(orig. proceeding) (per curiam) (granting mandamus to
rescind order denying relator’s requests to either
appoint counsel to represent him, allow him to represent himself, or allow him
to be represented by another inmate); see
generally 58 Tex. Jur. 3d Penal
and Correctional Institutions § 91 (1996).





[5]           The record does not reflect the
length of Mohammed’s confinement, except that Mohammed alleges that he is
serving a 20-year sentence and Rebecca testified during the divorce trial that
Mohammed is eligible for parole in 2003.





[6]           We note that although Rebecca
testified at trial that the couple’s two children used her maiden name on all
of their school, church, and doctor records, Mohammed attached to his brief
copies of the children’s school report cards reflecting their use of his
surname at school.  In addition, to the
extent Rebecca was in possession of the couple’s belongings at the time
Mohammed was incarcerated, the property division to each party of the
belongings in their possession effectively awarded all of that property to
Rebecca.





[7]           However, several similar cases have
been reversed without addressing harm.  See, e.g., Daugherty, 42 S.W.3d at 336; Dodd,
17 S.W.3d at 718; Byrd, 877 S.W.2d at
569. 





[8]           See Taylor v. Taylor, 63 S.W.3d
93, 98 (Tex. App.—Waco
2001, no pet.).





[9]           See Wilson
v. Dunn, 800 S.W.2d 833, 837 (Tex. 1990)
(holding that a motion for new trial is not 
required to preserve complaint of defective service with regard to
default judgment).





[10]          Because we sustain the second
issue, we need not address the challenges presented in the remaining issues.