Opinion issued November 19, 2009








                    





     



In The
Court of Appeals
For The
First District of Texas




NO. 01-07-01053-CV




BETSABE IVONNE NIESSEN VELASCO, Appellant

v.

ALFONSO IGNACIO AYALA, Appellee




On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2004-20030




O P I N I O N

          Appellant, Betsabe Ivonne Niessan Velasco, appeals from the trial court’s
denial of her motion for new trial, in which she attacked the underlying decree of
divorce and termination of her parental rights as void for lack of personal jurisdiction.
          On appeal, Betsabe presents two issues. In her first issue, she contends that she
was cited by publication using an incorrect name. In her second issue, Betsabe
contends that, in his affidavit to procure service by publication, appellee, Alfonso
Ignacio Ayala, “falsely stated” that Betsabe’s address was unknown and that he had
used due diligence in attempting to serve her. Betsabe contends that Alfonso “did not
satisfy constitutional due diligence requirements because . . . he never once attempted
to personally serve” her through the Hague Convention on Service Abroad of Judicial
and Extrajudicial Documents in Civil and Commercial Matters” (the “Hague Service
Convention”), which is the “exclusive method of service on a Mexican resident.” 
          We reverse and remand.
Background
          Betsabe and Alfonso,


 both citizens of Mexico, were married in 1996 and lived
in Mexico City. In 1998, their daughter, B.A., was born. In October 2003, Alfonso
brought B.A. to Houston to visit his family. In November 2003, Betsabe came to
Houston to visit and stayed with Alfonso and B.A. at Alfonso’s sister’s house. 
Betsabe believed that she, Alfonso, and B.A. would be returning to their home in
Mexico City.
          On or about February 13, 2004, Betsabe learned that Alfonso did not intend to
return to Mexico and that he intended to keep B.A. with him in Houston. Betsabe and
Alfonso argued and it escalated into a physical fray. According to Alfonso’s
testimony and affidavit, Betsabe attempted to drag, then five-year-old, B.A. out of the
house. The police arrived, handcuffed Betsabe, and removed her to a women’s
shelter in Houston. 
          Betsabe, who does not speak any English, remained at the shelter for three
months. During that time, Alfonso removed B.A. from school, and Betsabe could not
find them. By May 2004, Betsabe had little money left and her travel visa was about
to expire. She returned to the couple’s home in Mexico City, where she sought legal
counsel and began proceedings through the Hague Convention on International Child
Abduction.



          In the interim, on April 21, 2004, Alfonso filed an original petition for divorce,
seeking joint conservatorship of B.A. and child support from Betsabe. He named
Betsabe, who is “Betsabe Ivonne Niessen Velasco,” as respondent “Betsabe Ivonne
Ayala” and stated that she resided in Harris County. Alfonso did not request service
of process at that time. 
          In his first amended petition for divorce, filed July 9, 2004, Alfonso sought
joint managing conservatorship of B.A. and the right to determine her primary
domicile, but without any child support from Betsabe. Alfonso named Betsabe as
respondent “Betsabe Ivonne Ayala,” who resided at “Eje Central Lazaro Cardenas
No. 616-C 103, Col. Alamos C.P. 03100 Mexico D.F., Mexico.” Alfonso requested
the Harris County District Clerk to send service of process via certified mail to that
address. The citation and petition sent were in English. The “Officer’s Return for
Certified Mail” reflects that it was “returned unexecuted,” postmarked “Returned for
Termination of Law.”
          On September 20, 2004, Alfonso filed a second amended petition, seeking a
divorce and termination of Betsabe’s parental rights. In his petition, Alfonso alleged
that Betsabe had “voluntarily left the child alone or in the possession of another
without providing adequate support of the child and remained away for a period of
at least six months”; had “engaged in conduct or knowingly placed the child with
persons who engaged in conduct that endangers the physical or emotional well-being
of the child”; and had “knowingly engaged in criminal conduct that has resulted in
the Respondent’s conviction of an offense and confinement or imprisonment and
inability to care for the child for not less than two years from the date” the petition
was filed. Alfonso stated in his petition that “Betsabe Ivonne Ayala, Respondent,
resides in: Eje Central Lazaro Cardenas No. 616-C 103, Col. Alamos C.P. 03100
Mexico D.F., Mexico.” 
          On the same day, Alfonso moved for citation by publication. By his affidavit,
Alfonson attested, in pertinent part, as follows:
Before my family moved to the Houston area October 24, 2003, my wife
had a history of abusing our child by slapping her in the face and neck
repeatedly on a weekly basis.
On October 24, 2003, I, my wife and our child came to the United
States. We all have the appropriate visas to be here. On or about
February 13, 2004, my wife attacked our 5 year old daughter again. The
police were called and she was arrested. My daughter and I have not
seen her since that day.
          . . . . 
My wife called me and told me that she went to Kansas for a month or
so to stay with her sister and then returned to the Houston area. I filed
for divorce on April 21, 2004. My wife told me that she wanted the
divorce and she didn’t want to have anything to do with me or our
daughter, so I told her to call my attorney. She told my attorney that she
would sign papers as long as she didn’t have to pay child support and
attorney’s fees. So, I told my attorney to take out the request for child
support and attorney’s fees and send her the waiver and proposed
Agreed Divorce Decree. When I told my wife that I had my attorney
draw up the papers, she said she would sign on a new condition that I
would pay $30,000 for the sale of our daughter to me. She was in the
Houston area until two months ago, sometime in June.
My attorney sent the documents to my wife in Mexico last month in July
via Federal Express, but Federal Express was informed that my wife was
dead. I do not know the whereabouts of my wife for the last two
months. I request that the Court allow me to serve her via publication.
I have conducted due diligence to get her served and have been
unsuccessful. I request that an ad litem be appointed herein as required.
Since February 13, 2004, other than the two one-minute phone calls to 
[B.A.] in April of 2004, my wife has NOT called, sent letters, cards or
gifts for [B.A.]. She has not come to the home to see her or called on
the telephone requesting to talk to her. August 5 was our daughter’s
birthday, but her mom didn’t even call or send a card or gift.
Last week, I was informed that my wife will be filing for abduction
charges under the Hague Treaty, presumably since I have not paid the
$30,000 ransom. I fear that she will abduct my daughter and hide her
out until I pay her ransom. For all these reasons, I request special relief
that my wife be excluded from having any possession and access to our
child.

 
The trial court found that service of citation by publication on Betsabe was authorized
and granted Alfonso’s motion. Citation of “Betsabe Ivonne Ayala” was published in
the Daily Court Review of Harris County on December 2, 2004. 

          On December 13, 2004, the trial court appointed Laura Arteaga as attorney ad
litem to represent Betsabe and appointed Heather Horwitz as amicus attorney to
represent B.A. On December 22, 2004, Horwitz filed an answer. On February 28,
2005, Arteaga filed an answer on behalf of Betsabe, entering a general denial. 
Arteaga did not challenge the validity of the citation or contest personal jurisdiction
over Betsabe. Arteaga propounded interrogatories to Alfonso, and Alfonso provided
Arteaga with copies of Betsabe’s passport, travel visa, and B.A.’s birth certificate. 
The record reflects that these documents list Betsabe’s name as “Betsabe Ivonne
Niessen Velasco,” “Betsabe I. Niessen,” or “Betsabe Niessen Velasco.” Arteaga sent
several pieces of correspondence to Betsabe at different addresses, which were
returned. Arteaga filed a statement of facts, discussing in detail her unsuccessful
efforts to locate Betsabe.

          On July 18, 2005 and August 15, 2005, the trial court held a “Default Hearing.” 
Arteaga appeared on behalf of Betsabe, Horwitz appeared on behalf of B.A., and the
testimony of Alfonso was taken. Alfonso testified that Betsabe had been physically
abusive toward B.A. and toward him. Alfonso said that he had spoken with Betsabe
by telephone during the course of the proceedings and had discussed the divorce with
her. Alfonso said that Betsabe agreed to the divorce and to “give him” B.A. in
exchange for $30,000. According to Alfonso, Betsabe refused to pay child support
and told him that she would not sign anything until he paid her. 

          At the hearing, the trial court asked Arteaga if she thought that “all reasonable
efforts [had] been made to notify [Betsabe] by more traditional means than
publication.” Arteaga responded, “[A]ll reasonable efforts have been made, Judge,
of taking into account what was provided.” The trial court asked, “Are you hinting
that there is information out there that ha[s]n’t been provided that would be more
helpful?” Arteaga responded, “I believe there may be, Judge. . . . I believe [Alfonso]
may have information on family members.” Arteaga said that she “made at least one
phone call” to the Mexican Consulate, but that it had not returned her call. Then, the
following colloquy took place:

          [Alfonso’s counsel]:        We have done everything to locate this woman. She
has notice about the lawsuit. She has notice.
          THE COURT:                 Does she know that her rights are asked to be
terminated, or she just know that she has been sued
for divorce?
          [Alfonso’s counsel]:        Yes. I believe she knows she is going to be
terminated.
          THE COURT:                 And what is your basis for that?
          [Alfonso’s counsel]:        Whatever he told her.
          [Arteaga]:                        She hadn’t received any of my letters, but she may
have received the regular mail, but she did receive
my Certified Mail.
          . . . . 
          THE COURT:                 Did you tell her at any time that you intended to
terminate her rights to the child?
          [Alfonso’s counsel]:        Yes.
          THE COURT:                 How did you tell her?
          [Alfonso’s counsel]:        I told her the divorce was filed.
          THE COURT:                 Divorce is one thing, terminating is another.

          On September 7, 2005, the trial court signed a Final Decree of Divorce and
Termination. The decree contains a recital that the court found that Betsabe,
“although duly cited by publication,” had “failed to appear” and had “wholly made
default.” The trial court awarded the apartment in Mexico and its contents to
Betsabe; awarded Alfonso’s business to Alfonso; and terminated Betsabe’s parental
rights.
          Two years later, on September 6, 2007, Betsabe moved for a new trial. She
directed the trial court to Texas Rule of Civil Procedure 329, which provides that, in
cases in which judgment has been rendered on service of process by publication,
when the defendant has not appeared in person or by attorney of her choosing, the
court may grant a new trial upon a petition of the defendant showing good cause,
supported by affidavit, filed within two years after the judgment was signed.


 In her
motion, Betsabe alleged that she had been improperly cited by publication under the
name “Betsabe Ivonne Ayala,” a name that she had never used. In addition, Betsabe
asserted that Alfonso had “procured the service of citation and the default judgment
by fraud.” Betsabe alleged that Alfonso had at all times known where she was
located, that he had correctly listed her address in his first and second amended
petitions as the apartment in Mexico that they owned and wherein they had resided
together, and that he had failed to effectuate personal service at that address. 
          In her motion, Betsabe stated that “due to logistical problems” caused by her
living in Mexico, she was unable to file a notarized verification and affidavit on the
day she filed her motion for new trial, but that she would timely supplement her
filing. On September 10, 2007, Betsabe filed an “Amended Motion for New Trial,”
to which she attached an affidavit in support of her motion. 
          Alfonso did not file a written response. The trial court moved forward with a
hearing on the motion for new trial.
          At the hearing, Betsabe argued, through her counsel, that, inter alia, pursuant
to the Hague Service Convention, Alfonso was required to effectuate personal service
on her in Mexico and could not merely cite her by publication in Harris County. 
Alfonso argued that Betsabe’s motion for new trial was untimely because the two-year period allowed under Rule 329 had expired on Friday, September 7, 2007, but
that Betsabe had not submitted the required affidavit until Monday, September 10,
2007. 
          The trial court orally denied Betsabe’s motion for new trial, but did not enter
a written order. Subsequently, Betsabe filed a motion to reconsider, in which she re-urged her contentions based on Alfonso’s failure to comply with the terms of the
Hague Service Convention. Her motion was overruled by operation of law.
Motion for New Trial
          In her first and second issues, Betsabe contends that the trial court erred by
denying her motion for new trial, in which she challenged the underlying decree of
divorce and termination of her parental rights as void for lack of personal jurisdiction. 
A.      Standard of Review
          We review a trial court’s denial of a motion for new trial for an abuse of
discretion. See Cliff v. Huggins, 724 S.W.2d 778, 778–79 (Tex. 1987). To determine
whether a trial court abused its discretion, we must decide whether the trial court
acted without reference to any guiding rules or principles, or acted in an arbitrary or
unreasonable manner. Cire v. Cummings, 134 S.W.3d 835, 838–39 (Tex. 2004). An
abuse of discretion does not occur with regard to factual matters as long as some
evidence reasonably supports the trial court’s decision. Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 211 (Tex. 2002). Nor does it occur when the trial court’s decision
is based on conflicting evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978).
B.      Applicable Legal Principles
          The trial court stated in the decree that it found that Betsabe, “although duly
cited by publication,” had “failed to appear” and had “wholly made default.”
Ordinarily, to obtain a new trial following a “default judgment,” a defaulting party
must meet the test articulated in Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d
124 (Tex. 1939). Lowe v. Lowe, 971 S.W.2d 720, 723 (Tex. App.—Houston [14th
Dist.] 1998, pet. denied). Here, however, because the record reflects that Betsabe was
represented at trial by an attorney ad litem appointed by the court and the case was
tried on the merits, the trial court’s decree is not a true default judgment. See LeBlanc
v. LeBlanc, 778 S.W.2d 865, 865 (Tex. 1989) (explaining that there is no default
when party is represented at trial by counsel, even though party failed to appear
personally for trial); In re K.C., 88 S.W.3d 277, 279 (Tex. App.—San Antonio 2002,
pet. denied) (stating that Craddock does not apply when party’s attorney appears and
case is tried on merits); see also Jackson v. Jackson, No. 01-04-012150CV, 2006 WL
3095384, at *4 (Tex. App.—Houston [1st Dist.] Nov. 2, 2006, no pet.) (not
designated for publication).
          Betsabe brought her motion for new trial pursuant to Rule of Civil Procedure
329. See Tex. R. Civ. P. 329. Rule 329 prescribes the applicable test, as follows, in
pertinent part:
In cases in which judgment has been rendered on service of process by
publication, when the defendant has not appeared in person or by
attorney of his own selection:
          (a)     The court may grant a new trial upon petition of the defendant
showing good cause, supported by affidavit, filed within two
years after such judgment was signed. The parties adversely
interested in such judgment shall be cited as in other cases.

 
Tex. R. Civ. P. 329(a) (emphasis added). 

          Here, the trial court’s judgment was rendered after service of process on
Betsabe by publication, and Betsabe did not appear in person or by an attorney of her
own selection. See id. Hence, the trial court “may” grant a new trial if Betsabe
showed “good cause.” See Morris v. Morris, 759 S.W.2d 707, 711 (Tex. App.—San
Antonio 1988, writ denied) (J. Butts, dissenting) (explaining that judgment following
citation by publication is not true default and that Rule 329 is proper vehicle for
challenge). Good cause means (1) lack of actual knowledge of the suit prior to
rendition of judgment and (2) a meritorious defense. Sexton v. Sexton, 737 S.W.2d
131, 132 (Tex. App.—San Antonio 1987, no writ). Although granting or refusing to
grant a motion for new trial is within the court’s discretion, it is an abuse of discretion
to refuse to set aside a prior judgment if good cause is shown. Stock v. Stock, 702
S.W.2d 713, 715 (Tex. App.—San Antonio 1985, no writ). Trial courts are directed
to exercise their discretion with liberality to permit a defendant her day in court after
citation by publication. Leak v. Leak, 564 S.W.2d 839, 841 (Tex. Civ. App.—Austin
1978, no writ). This is especially true in suits affecting the parent-child relationship. 
Sexton, 737 S.W.2d at 133.

          We first consider whether there was valid service of process. We need not
determine “good cause” if the record does not show due service of citation. See
Wiebusch v. Wiebusch, 636 S.W.2d 540, 542 (Tex. App.—San Antonio 1982, no writ)
(construing Rule 329).

C.      Due Service of Citation

          In her second issue, Betsabe contends that, in his affidavit to procure service
by publication, Alfonso “falsely stated” that Betsabe’s address was unknown and that
he had used due diligence in attempting to serve her. Betsabe contends that Alfonso
“did not satisfy constitutional due diligence requirements because . . . he never once
attempted to personally serve” her through the Hague Service Convention, which is
the “exclusive method of service on a Mexican resident.” In her first issue, Betsabe
contends that she was cited by publication using an incorrect name.


 

          1.       Due diligence        

          Alfonso stated in his first amended petition, “Betsabe Ivonne Ayala,
Respondent, resides in: Eje Central Lazaro Cardenas No. 616-C 103, Col. Alamos
C.P. 03100 Mexico D.F., Mexico.” Alfonso attempted to serve Betsabe by certified
mail sent directly to her at that address.

          Service of process on a defendant in Mexico is governed by the Hague Service
Convention, which is an international treaty. See Nov. 15, 1965, 20 U.S.T. 361;
Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698, 108 S. Ct. 2104,
2107 (1988) (“The Hague Service Convention is a multilateral treaty.”); see Nuovo
Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 383 (5th Cir. 2002) (characterizing
Hague Service Convention as multinational treaty). The United States ratified the
treaty in 1969; Mexico acceded to the treaty on November 2, 1999, and it “entered
into force” in Mexico on June 1, 2000.


 The Hague Service Convention applies “in
all cases, in civil or commercial matters, where there is an occasion to transmit a
judicial or extrajudicial document for service abroad.” 20 U.S.T. 361, art. 1; Schlunk,
486 U.S. at 699, 108 S. Ct. at 2108 (stating that “this language is mandatory”). The
purpose of the treaty is “to provide a simpler way to serve process abroad, to assure
that defendants sued in foreign jurisdictions would receive actual and timely notice
of suit, and to facilitate proof of service abroad.” Schlunk, 486 U.S. at 698, 108 S. Ct.
at 2107. 

          Article VI of the Constitution of the United States provides as follows, in
pertinent part: 

This Constitution, and the laws of the United States which shall be
made in Pursuance thereof; and all treaties made, or which shall be
made, under the Authority of the United States, shall be the supreme law
of the Land; and the judges of every state shall be bound thereby, any
Thing in the Constitution or Laws of any State to the Contrary
notwithstanding.

 
U.S. Const. art. VI, cl. 2 (emphasis added). The United States Supreme Court has
held that the Hague Service Convention “pre-empts inconsistent methods of service
prescribed by state law in all cases to which it applies.” Schlunk, 486 U.S. at 699,
108 S. Ct. at 2108 (stating that this is “by virtue of the Supremacy Clause, U.S.
Const., art. VI”). In addition, Texas courts have held that “[t]he Hague Convention
preempts any inconsistent methods of service prescribed by Texas law in all cases
where the Convention applies.” Paradigm Entm’t, Inc. v. Video Sys. Co., No. Civ.A.
3:99–CV–2004 P., 2000 WL 251731, at *4 (N.D. Tex. Mar. 3, 2000). 

          The methods of service provided by Texas law are found in the Texas Rules
of Civil Procedure. Rule 108a, which governs service of process in foreign countries,
provides as follows, in pertinent part:

Service of process may be effected upon a party in a foreign country if
service of the citation and petition is made: . . . (c) in the manner
provided by Rule 106; or (d) pursuant to the terms of any applicable
treaty or convention; . . . or (f) by any other means directed by the court
that is not prohibited by the law of the country where service is to be
made. The method for service of process in a foreign country must be
reasonably calculated, under all the circumstances, to give actual notice
of the proceeding to the defendant in time to answer and defend. A
defendant served with process under this rule shall be required to appear
and answer in the same manner and time and under the same penalties
as if he had been personally served with citation within this state to the
full extent that he may be required to appear and answer under the
Constitution of the United States or under any applicable convention or
treaty in an action either in rem or in personam.Tex. R. Civ. P. 108a. Hence, as applicable to this case, service may be effectuated
upon a party in a foreign country if service is made (1) in the manner provided by
Rule 106; (2) pursuant to the terms of any applicable treaty or convention; or (3) by
any other means directed by the court that is not prohibited by the law of the country
where service is to be made.  

          Texas Rule of Civil Procedure 106 provides, in pertinent part:

          (a)     Unless the citation or an order of the court otherwise directs, the
citation shall be served by any person authorized by Rule 103 by (1) delivering to the defendant, in person, a true copy of the citation
with the date of delivery endorsed thereon with a copy of the
petition attached thereto, or 
                    (2)     mailing to the defendant by registered or certified mail, return
receipt requested, a true copy of the citation with a copy of the
petition attached.
Tex. R. Civ. P. 106. Rule 103 authorizes service to be made by “(1) any sheriff or
constable or other person authorized by law, (2) any person authorized by law or by
written order of the court who is not less than eighteen years of age, or (3) any person
certified under order of the Supreme Court.” Tex. R. Civ. P. 103. Hence, citation and
a copy of the petition are to be served by an authorized person and are to be delivered
to the defendant, in person, or sent by registered or certified mail. 

          The Hague Service Convention, however, “does not permit service of process
by direct mail” to a defendant.


 Nuovo Pignone, 310 F.3d at 384; 20 U.S.T. 361, art.
5. Requests for service on a defendant within the borders of Mexico must be sent
directly to Mexico’s designated Central Authority. See Schlunk, 486 U.S. at 698–99,
108 S. Ct. at 2107–08 (explaining that Convention requires each state to establish a
central authority to receive requests for service from other countries). The Central
Authority then forwards the request to the competent judicial authority to effectuate
service. 20 U.S.T. 361, art. 5 (“The Central Authority of the State addressed shall
itself serve the document or arrange to have it served by an appropriate agency.”).
Mexico has designated, as its Central Authority, the General Direction of Legal
Affairs of the Ministry of Foreign Affairs, and Mexico requires that documents to be
served in within its borders be in Spanish or accompanied by a corresponding
translation.




          In this case, the record reflects that Alfonso attempted to serve Betsabe with
his first amended petition by certified mail sent directly to her at her address in
Mexico and that the citation was returned, marked undeliverable. It is undisputed that
Alfonso never attempted to serve Betsabe through Mexico’s Central Authority. In
addition, the record reflects that the citation and petition were in English and had no
accompanying Spanish translation. Hence, Alfonso failed to effectuate valid service
of citation on Betsabe, either in person or by mail.

          Texas Rule of Civil Procedure 108a also allows service by “any other means
directed by the court that is not prohibited by the law of the country where service is
to be made.” Tex. R. Civ. P. 108a(f). Here, the trial court directed that Alfonso
could serve Betsabe with his second amended petition by citing her by publication,
as provided by Rule 109. Rule 109, “Citation by Publication,” provides,

When a party to a suit . . . shall make oath that the residence of any party
defendant is unknown to the affiant . . . and that after due diligence . . .
the affiant ha[s] been unable to locate the whereabouts of such
defendant, . . . the clerk shall issue citation for such defendant for
service by publication. In such cases, it shall be the duty of the court
trying the case to inquire into the sufficiency of the diligence exercised
in attempting to ascertain the residence or whereabouts of the defendant
. . . before granting any judgment on such service.

 
Tex. R. Civ. P. 109. 

          Although nothing in the Hague Convention expressly disavows service by
publication, because service under the Convention is required to be in Spanish and
transmitted through Mexico’s Central Authority, it does not appear that service by
publication in English in a Texas newspaper, when the defendant is known to be in
Mexico (as is evidenced by Alfonso’s assertions in his petition), comports with the
terms of the Hague Service Convention. 

          This conclusion is supported by Article 15, paragraph 1, of the Hague Service
Convention, which provides as follows:

[w]here a writ of summons or an equivalent document had to be
transmitted abroad for the purpose of service, . . . and the defendant has
not appeared, judgment shall not be given until it is established that 
          (a)     the document was served by a method prescribed by the internal
law of the State [here, Mexico] addressed for the service of
documents in domestic actions upon persons who are within its
territory, or
          (b)     the document was actually delivered to the defendant or to his
residence by another method provided for by this Convention, and
that in either of these cases the service or the delivery was
effected in sufficient time to enable the defendant to defend. 
20 U.S.T. 361, art. 15. Mexico “does not recognize the faculty of the judicial
authority to give judgment when the defendant has not appeared and there is no
communication establishing that the document was served, or that documents
originating outside the country were indeed delivered, according to subparagraphs”
(a) and (b) above.


 

           Even if we assume, without deciding, that the Hague Service Convention
allows service by publication, here, Alfonso attested in his affidavit to acquire service
by publication, pursuant to Rule 109, that Betsabe’s residence was unknown. 
However, the record shows that Alfonso stated in his second amended petition, filed
the same day as his application for service by publication, the address of Betsabe’s
residence in Mexico. 

          In Marriage of Peace, the court considered, on facts similar to the instant case,
whether service by publication was proper when the residence of the defendant was
known and concluded that it was not. In the Matter of the Marriage of Peace, 631
S.W.2d 790, 793 (Tex. App.—Amarillo 1982, no writ). There, as here, the appellant,
Guadalupe, and appellee, Charles, were married in Mexico and owned property in
Mexico and in Texas. Id. Guadalupe was a Mexican citizen. Id. Twenty-one years
later, Charles filed for divorce in Texas. Id. Charles traveled to Mexico to ask
Guadalupe to sign the divorce papers, but she refused. Id. Subsequently, Charles
filed an affidavit, under Rule of Civil Procedure 109, seeking to serve Guadalupe by
publication. Id. Similar to the instant case, publication appeared in English, in a
weekly newspaper, the Friona Star, located in Parmer County, Texas. Id. Also
similar, Guadalupe did not appear at trial, and the trial court appointed an ad litem to
represent her interests. Id. at 792. After trying the case on the merits, the trial court
rendered judgment granting Charles a divorce, dividing that portion of the parties’
estate that was located in Texas. Id. There, as in the case at hand, Guadalupe filed
a motion for new trial under Rule 329, which was overruled, and Guadalupe
appealed. Id. at 791.

          On appeal, the court concluded that the trial court did not have jurisdiction over
Guadalupe “as a result of the service by publication.” Id. The court recognized that,

notice by publication is not enough with respect to a person whose name
and address are known or very easily ascertainable and whose legally
protected interests are directly affected by the proceedings in question. 
“Where the names and post-office addresses of those affected by a
proceeding are at hand, the reasons disappear for resort to means less
likely than the mails to apprise them of its pendency.”

 
Id. at 794 (quoting Schroeder v. New York, 371 U.S. 208, 212–13, 83 S. Ct. 279,
282–83 (1962) (applying and quoting Mullane v. Central Hanover B. & T. Co., 339
U.S. 306, 318, 70 S. Ct. 652, 659 (1950)).

          There, as in the instant case, the evidence showed that Charles had
communicated by telephone with Guadalupe, who was in Mexico, and that Charles
had admitted that he knew where to send mail to Guadalupe in Mexico. Id. at 793. 
There, as Arteaga testified in the instant case, the testimony showed that Guadalupe
had received at least one letter. Id. The court reasoned that, under all the
circumstances of the case, service by publication in the Friona Star located in Parmer
County, Texas, was not reasonably calculated to apprise Guadalupe of the pendency
of the action and afford her an opportunity to present her objections. Id. at 794.
Guadalupe’s actual knowledge of the suit did not “aid or support the trial court’s
jurisdiction” to render the divorce. Id. The court reversed and remanded for a new
trial. Id.

          Although Marriage of Peace pre-dates Mexico’s accession to the Hague
Service Convention, we find its rationale applicable to this case because it comports
with the guiding authority to which we are bound in this case—the objectives of the
Hague Service Convention,


 the established doctrines of the United States Supreme
Court,


 and the Texas Rules of Civil Procedure concerning service on foreign
defendants.




          Here, as in Marriage of Peace, we conclude that, under all the circumstances
of this case—which include that Alfonso knew Betsabe’s address in Mexico, had
spoken to her by phone during the proceedings, and that Betsabe does not speak
English—notice to Betsabe by publication in English in a Texas periodical did not
constitute valid service of Alfonso’s suit for divorce and termination of Betsabe’s
parental rights.

          Moreover, even if we assume, without deciding, that citation by publication
was a valid method of service in this case, the record does not show strict compliance
with the rules regarding service of citation. The record reflects that Betsabe is named
in her passport, her visa, and on B.A.’s birth certificate as “Betsabe Ivonne Niessen
Velasco.” In addition, Betsabe’s immigration documents list her name as “Betsabe
I. Niessen.” Betsabe attested in her affidavit in support of her motion for new trial
that her name is “Betsabe Ivonne Niessen Velasco,” that her “name has never been
“Betsabe Ivonne Ayala,” and that she “has never gone by that name.” Alfonso did not
controvert Betsabe’s contentions. Nothing in the record supports that Betsabe has
used the name “Betsabe Ivonne Ayala,” the name in which citation by publication
was issued. 

          In a direct attack on a judgment, as here, we do not presume the validity of
issuance, service, or return of citation. See Amato v. Hernandez, 981 S.W.2d 947,
949 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). If the record does not show
strict compliance with the rules regarding service of citation, then service was invalid
and the judgment is void. Id. “Strict compliance” means literal compliance with the
rules governing issuance, service, and citation. Id. An incorrect name is sufficient
to show a citation is not in strict compliance with the rules. See id.; Medeles v. Nunez,
923 S.W.2d 659, 663 (Tex. App.—Houston [1st Dist.] 1996, writ denied), rev’d on
other grounds by Barker CATV Const. Inc. v. Ampro Inc., 989 S.W.2d 789 (Tex.
App.—Houston [1st Dist.] 1999, no pet.) (concluding that citation was invalid
because it named “Maria Mendeles,” rather than “Maria Medeles” as defendant). 

          At trial, Alfonso testified that Betsabe had actual notice of the suit because he
had talked with her by telephone. Actual notice to a defendant of a pending suit,
without proper notice, is not sufficient. See Amato, 981 S.W.2d at 950 (citing Wilson
v. Dunn, 800 S.W.2d 833, 836 (Tex. 1990)). 

 
          In sum, the record does not reflect that Alfonso effectuated valid service of
process on Betsabe, the trial court did not acquire personal jurisdiction over her. 
“[J]urisdiction is dependent upon citation issued and served in a manner provided for
by law.” Wilson, 800 S.W.2d at 836; see Tex. R. Civ. P. 124 (stating that trial court
does not have jurisdiction to enter judgment or order against respondent unless record
shows proper service of citation on respondent, an appearance by respondent, or
written memorandum of waiver at time judgment or order was entered).

          “It is axiomatic that a judgment must be supported by a proper showing of
jurisdiction over the subject matter and over the relevant parties.” Underwriters Nat’l
Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Assoc., 455
U.S. 691, 705 n.10, 102 S. Ct. 1357, 1366 n.10 (1982); see Browning v. Placke, 698
S.W.2d 362, 363 (Tex. 1985); In re Bokeloh, 21 S.W.3d 784, 794 (Tex.
App.—Houston [14th Dist.] 2000, orig. proceeding). Personal jurisdiction is
comprised of two elements: (1) the defendant must be amenable to the jurisdiction of
the court and (2) the plaintiff must validly invoke that jurisdiction by valid service of
process on the defendant. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200
(Tex. 1985); Furst v. Smith, 176 S.W.3d 864, 868 (Tex. App.—Houston [1st Dist.]
2005, no pet.). Although a divorce proceeding is characterized as quasi in rem and
the Texas Family Code allows a trial court to issue a decree of divorce and a decree
as to child custody without personal jurisdiction over all the parties, such designation
does not dispense with the requirement that jurisdiction be invoked by adequate
notice to a non-resident spouse. See Tex. Fam. Code Ann. § 152.201(c) (Vernon
2008); Heth v. Heth, 661 S.W.2d 303, 304 (Tex. App.—Fort Worth 1983, no writ);
see also Deanne v. Deanne, 689 S.W.2d 262, 263 (Tex. App.—Waco 1985, no writ)
(“When a defendant has not been served in the manner required by law, the court’s
jurisdictional power to act in the case, both in rem and in personam jurisdiction, is not
invoked, notwithstanding actual notice of the suit on the part of the defendant. This
includes both in rem and in personam aspects of a divorce action.”); Perry v. Ponder,
604 S.W.2d 306, 322 (Tex. Civ. App.—Dallas 1980, no writ) (analyzing in detail the
components of personal jurisdiction in family law matters). Texas procedural law and
constitutional due process require that Betsabe be served, waive service, or
voluntarily appear before judgment may be rendered. See Tex. R. Civ. P. 124; Tex.
Fam. Code Ann. § 6.408 (Vernon 2008) (stating that “[c]itation on the filing of an
original petition in a suit for dissolution of a marriage shall be issued and served as
in other civil cases.”); Tex. Fam. Code Ann. § 152.205 (Vernon 2008) (stating,
generally, that before child custody determination may be made, notice and
opportunity to be heard must be given to any parent whose parental rights have not
been previously terminated); Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84–86,
108 S. Ct. 896 (1988); Kao Holdings, L.P. v. Young, 261 S.W.3d 60, 61–62 (Tex.
2008); Werner v. Colwell, 909 S.W.2d 866, 869–70 (Tex. 1995).

          Further, the Supreme Court of Texas has held that a termination suit, as this
case involves, is not a custody proceeding. Richardson v. Green, 677 S.W.2d 497,
500 (Tex. 1984). A termination suit is afforded higher scrutiny. In re G.M., 596
S.W.2d 846, 846 (Tex. 1980). An involuntary termination of parental rights involves
fundamental constitutional rights. See Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct.
1208, 1212–13 (1972); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). A
termination decree is complete, final, irrevocable and divests for all time that natural
right as well as all legal rights. See Holick, 685 S.W.2d at 20. Termination
proceedings must be strictly scrutinized, and termination statutes are strictly
construed in favor of the parent. Id. Thus, we must exercise the utmost care in
reviewing the termination of parental rights to be certain that a parent’s rights are
acknowledged and protected. Vela v. Marywood, 17 S.W.3d 750, 759 (Tex.
App.—Austin 2000, pet. denied). 

          When, as here, a trial court enters a judgment before it acquires jurisdiction of
the parties, the judgment is void. Browning v. Placke, 698 S.W.2d 362, 363 (Tex.
1985); In re Mask, 198 S.W.3d 231, 234 (Tex. App.—San Antonio 2006, orig.
proceeding) (“A judgment or order is void when it is apparent that the court rendering
it lacked jurisdiction of either the parties or the subject matter of the lawsuit.”). A
void order has no force or effect and confers no rights; it is a mere nullity. In re
Garza, 126 S.W.3d 268, 271 (Tex. App.—San Antonio 2003, orig. proceeding). A
void order is not subject to ratification, confirmation, or waiver. Id.


 

          We recognize that, ordinarily, under the Texas Rules of Civil Procedure,
because the attorney ad litem appointed for Betsabe filed an answer, asserting a
general denial, Betsabe would have waived her right to challenge any defects of
service. See Tex. R. Civ. P. 121 (stating that “an answer shall constitute an
appearance of the defendant so as to dispense with the necessity of the issuance of
service of citation upon him”); In re A.B., 207 S.W.3d 434, 439–40 (Tex.
App.—Dallas 2006, no pet.) (holding that general denial filed by attorney ad litem,
who was appointed to represent resident defendant who did not appear in divorce suit
after citation by publication, waived any defect of service and that trial court had
personal jurisdiction over defendant); Phillips v. Dallas Co. Child Prot. Servs. Unit,
197 S.W.3d 862, 865 (Tex. App.—Dallas 2006, pet. denied) (holding, in context of
default order terminating parental rights, that filing of general denial by attorney ad
litem waived any complaint about defective service); see also In re $475,001.16, 96
S.W.3d 625, 628–29 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding
appellant waived right to challenge defects in service after attorney ad litem
appointed to act on appellant’s behalf answered suit). 

          In each of these cases, however, there was either evidence that the defendant
was a resident of the State of Texas or evidence that the whereabouts of the defendant
were entirely unknown. In either situation, the Texas Rules of Civil Procedure
govern. The Hague Service Convention does not apply when the defendant is a
resident of Texas or the residence of the defendant is unknown. See 20 U.S.T. 361,
art. 1. Here, however, Betsabe is not a resident of Texas and the address of her
residence is known. Because she is a resident of Mexico, the Hague Service
Convention governs. Moreover, because we have concluded that the trial court did
not acquire personal jurisdiction over Betsabe at the commencement of suit, the
subsequent actions of the trial court in authorizing the ad litem to represent her
interests at trial, and everything that flowed therefrom, are likewise a nullity.

          We also recognize that Family Code section 161.211 restricts a parent’s ability
to bring a direct or collateral attack on a termination proceeding more than six months
after the date the order is signed. Tex. Fam. Code Ann. § 161.211 (Vernon 2008). 
Further, the record shows that, here, the two-year period provided for Betsabe to
bring her motion for new trial in Rule 329 expired on Friday, September 7, 2007, but
Betsabe did not file her Rule 329 affidavit until Monday, September 10, 2007.


 
However, to hold that Betsabe is now precluded from challenging a void decree of
divorce and termination of her parental rights pursuant to such state procedural rule
or statute is to ignore that Alfonso failed at the outset to invoke the trial court’s
jurisdiction over Betsabe because he failed to serve her under the terms of the Hague
Service Convention, the provisions of which are mandatory, pre-emptive, and
constitute “the supreme law of the Land” to which “the judges of every state shall be
bound . . . any Thing in the Constitution or Laws of any State to the Contrary
notwithstanding.” U.S. Const. art. VI, cl. 2 (emphasis added); see Schlunk, 486 U.S.
at 699, 108 S. Ct. at 2108.

 
          We conclude that, because Betsabe is a citizen of a Mexico and the record
shows that her address in Mexico was known to Alfonso at the time he sought to
effect service on her (which was the same day he filed his petition containing her
address in Mexico), and because Betsabe was not duly served with citation under the
law, the trial court did not acquire personal jurisdiction over her and the trial court’s
judgment is void. We hold that the trial court abused its discretion by failing or
refusing to grant Betsabe’s motion for new trial.

          Accordingly, we sustain Betsabe’s first and second issues.

ConclusionWe reverse the trial court’s judgment and remand for a trial on the merits.






 

 



                                                             Laura Carter Higley

                                                             Justice



Panel consists of Justices Jennings, Higley, and Sharp.